IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NICK APPLEGARTH,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-1309** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| | : | **Magistrate Judge Elizabeth Preston** |
| | : | **Deavers** |
| **POWER HOME SOLAR, LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before this Court on Plaintiff Nick Applegarth's Motion to Remand (the "Motion"). (ECF No. 10). For the reasons set forth below, Plaintiff's Motion to Remand (ECF No. 10) is **DENIED**.

## I.     BACKGROUND

On February 13, 2024, Plaintiff Nick Applegarth, an Ohio resident, filed a complaint against a solar power company, Power Home Solar, LLC, d/b/a, Pink Energy ("Pink Energy"); a not-for-profit financial cooperative, Digital Federal Credit Union ("DFCU"); a 25% owner in Pink Energy, Trivest Partners, L.P. ("Trivest"); founder and CEO of Pink Energy, Jayson Waller; and alleged "employee/supervisor" and "employee/manager" of Pink Energy Paul Grysiuk and Jake Hynes, respectively. (ECF No. 2). The only Ohio resident defendants are Grysiuk and Hynes. On March 21, 2024, Defendant Waller removed the action to this Court for diversity and related bankruptcy jurisdiction. (ECF No. 1). On April 2, 2024, Plaintiff filed an Amended Complaint

before filing the Motion. (ECF No. 9). Each party relies on the First Amended Complaint in their briefing.[1]

The Amended Complaint includes claims for contract breach, fraudulent misrepresentation, negligent misrepresentation, negligent hiring and training, violation of the Ohio Consumer Sales Practices Act, civil conspiracy, and alter ego. (*Id*.). The claims arise out of a sales agreement and associated loan agreement for the sale and installation of a solar energy system. Plaintiff alleges various wrongful actions in connection with the sale were committed by "Pink Energy Group" which Plaintiff defines as "Defendant Pink Energy and/or Defendant Trivest, and/or Defendant Waller, and/or Defendant Grysiuk, and/or Defendant [Hynes]." (*Id*. ¶ 10).[2] The Amended Complaint alleges that the Pink Energy Group trained and encouraged employees to use "hard sell tactics" in an attempt to sell their solar panel systems and loan products. (*Id*. ¶¶ 49–63). Plaintiff alleges the tactics used were deceptive, the Pink Energy Group pushed misleading and false information, and the Pink Energy Group trained and directed sales agents to use the deceptive hard sell tactics. (*Id*. ¶¶ 52–53). These tactics included misrepresenting cash incentive and tax credit opportunities, providing false information about cost offsets, and hiding financing fees. (*Id*. ¶¶ 49–63).

Plaintiff identifies Defendants Waller, Grysiuk, and Hynes as "intimately involved in facilitating and directing sales agents" to use the deceptive hard sell tactics. (*Id*. ¶ 57). Plaintiff alleges that it was at their directive that the sales agent who contacted Plaintiff visited Plaintiff's home and used the alleged hard sell tactics. (*Id*.). Plaintiff explains that "the true extent of the

---

[1] Plaintiff has since filed a Second Amended Complaint to correct the spelling of Jake Hyne's name (spelled Jake Hines in prior complaints). (ECF No. 46). For consistency purposes, this Court will reference the same complaint from parties' briefings on the Motion to Remand.

[2] Defendant Waller acknowledges the changes in the Amended Complaint are mainly these allegations against the "Pink Energy Group." (ECF No. 17 at 2).

misleading tactics that the Ohio defendants directed their agents to use will not be fully known until discovery begins." (ECF No. 10 at 3).

On March 21, 2024, Defendant Waller removed the case to this Court for diversity and related bankruptcy jurisdiction. (ECF No. 1). Waller argues that diversity jurisdiction exists because Grysiuk and Hynes, the non-diverse defendants, were fraudulently joined. (ECF No. 1 at 6). Defendant Waller also argues this court has related bankruptcy jurisdiction because Pink Energy is a debtor in ongoing bankruptcy proceedings. (*Id*. at 7–11). An order from the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") indicates that Defendant Pink Energy is the debtor in a bankruptcy proceeding and the Bankruptcy Court granted a motion to modify the automatic stay. (ECF No. 1-3). The stay was modified to allow cases against Pink Energy to proceed in United States District Court for the Southern District of Ohio. (*Id*.). The Bankruptcy Court noted "the entry of judgment against [Pink Energy] in the litigation in the United States District Court for the District of Ohio would not result in detriment to the estate of the Debtor, as any such judgment creditor would not be seeking to recover from assets in this bankruptcy estate, but instead would seek recovery from insurance coverage (to the extent available), and/or from other non-debtor defendants in the litigation." (*Id*.). Defendants DFCU, Trivest, and Pink Energy filed notices of joinder in Defendant Waller's opposition to the Motion. (ECF Nos. 19, 20, 43).

## II.     STANDARD OF REVIEW

### A.  Diversity Jurisdiction

A defendant may remove a case pursuant to 28 U.S.C. § 1441, which provides that defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction includes

federal-question jurisdiction and diversity jurisdiction. *Clarke v. Pollan*, No. 24-3548, 2024 WL 4903806, at *2 (6th Cir. Nov. 27, 2024) "The former requires a cause of action arising under' federal law. 28 U.S.C. § 1331. The latter requires diverse parties and a claim for over $75,000. 28 U.S.C. § 1332(a)(1)." *Clarke*, 2024 WL 4903806, at *2. The parties seeking removal bear the burden of establishing the right to do so. *Mays v. City of Flint, Mich.*, 871 F.3d 437, 442 (6th Cir. 2017). Moreover, any doubt as to whether remand is appropriate must be resolved in favor of remand. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) *(*quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

Defendant Waller removed this case as one arising under this Court's diversity jurisdiction. 28 U.S.C. § 1332. Diversity jurisdiction requires that each defendant be a citizen of a state different from that of each plaintiff. 28 U.S.C. § 1332(a)(1); s*ee also Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017). When a case is removed with non-diverse parties on diversity grounds, a motion to remand may be defeated if the non-diverse parties were fraudulently joined. *Saginaw Hous. Comm'n v. Bannum, Inc.,* 576 F.3d 620, 624 (6th Cir. 2009). "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Id.* (quoting *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir.1999)). To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999). "However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Id*.

### B.  Bankruptcy Jurisdiction

Defendants also contend that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1452 and 1334 because this is a case "relating to" bankruptcy proceedings. (ECF No. 1 at 7). Generally, removal of "any claim or cause of action in a civil action" is authorized under 28 U.S.C. § 1452 when the court has jurisdiction under 28 U.S.C. § 1334. *In re HNRC Dissolution Co.*, 761 F. App'x 553, 559–60 (6th Cir. 2019). Pursuant to § 1334(b), district courts have jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). When determining jurisdiction "the court need only 'determine whether a matter is at least 'related to' the bankruptcy.'" *In re HNRC Dissolution Co.*, 761 F. App'x at  559–60 (quoting *Mich. Emp't. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991)).

The Sixth Circuit finds that "related to" jurisdiction is governed by an expansive definition and requires this court to ask, "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. (quoting *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. ( In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996). "In other words, there is 'related to' jurisdiction if the *outcome* of the proceeding could *conceivably* 'alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)' or otherwise impact 'the handling and administration of the bankrupt estate.' *Id*. at 560 (quoting *In re Dow Corning Corp.*, 86 F.3d at 489).

### III.    LAW & ANALYSIS

### A.  Diversity Jurisdiction: Fraudulent Joinder

Defendant Waller argues that absent fraudulent joinder of the non-diverse defendants, Grysiuk and Hynes, this case would satisfy the requirements of diversity jurisdiction. (ECF No. 1

¶ 5). Waller maintains this case "is essentially a copycat of twenty prior lawsuits" involving common parties and many of the nearly identical cases were dismissed as to Defendant Waller for failure to plead personal liability. (*Id*. ¶ 9).[3] In its Notice of Removal, Defendant Waller relies on this Court's decision granting motions to dismiss in the cases similar to the instant case. (*Id*. ¶10). This argument is inapposite. The standard for a motion to remand, however, is arguably more deferential. *See Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011) ("First, even if the district court "pierces the pleadings" to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential. Second, any contested issues of fact must be construed in the plaintiff's favor.").

Defendant Waller more convincingly argues that Plaintiff's Amended Complaint is insufficient in bringing claims against the non-diverse defendants because it fails to allege the unique role played by them. (ECF No. 17 at 8). Plaintiff responds that the complaint includes allegations that are substantially more detailed than required with respect to the non-diverse defendants and relies on a single case, *McKinney v. CVS CaremarkCorp.*, S.D.Ohio No. 2:13-cv-00863, *McKinney v. CVS Caremark Corp.*, No. 2:13-CV-00863, 2014 WL 171838 (S.D. Ohio Jan. 13, 2014), *report and recommendation adopted*, No. 2:13-CV-863, 2014 WL 1608489 (S.D. Ohio

---

[3] Defendant Waller makes the same argument in the Opposition to Plaintiff's Motion to Remand, citing the following cases: *Mondello v. Power Home Solar, LLC*, No. 5:22-cv-01238, 2023 WL 6311463 (N.D. Ohio Sept. 28, 2023); *Davis v. Technology Credit Union*, No. 5:22-cv-02206, 2023 WL 4073752 (N.D. Ohio June 20, 2023); *Hutzell v. Power Home Solar, LLC*, No. 2:22-cv-02930, 2023 WL 4932068 (S.D. Ohio Aug. 2, 2023); *Bowe v. Power Home Solar, LLC*, No. 2:22-cv-04266, 2024 WL 1049820 (S.D. Ohio Mar. 11, 2024). The Court consolidated *Hutzell* with *Spencer-Ward v. Power Home Solar, LLC*, No. 2:22-cv-03149 (S.D. Ohio); *Annon v. Power Home Solar*, LLC, No. 2:22-cv-03174 (S.D. Ohio); *Farag v. Power Home Solar, LLC*, No. 1:22-cv-00448 (S.D. Ohio); *Steffen v. Power Home Solar, LLC*, No. 1:22-cv-00444 (S.D. Ohio); *Shultz v. Power Home Solar, LLC*, No. 3:22-cv-00223 (S.D. Ohio); *Whitaker v. Power Home Solar, LLC*, No. 3:22-cv-00233 (S.D. Ohio); *Heiland v. Power Home Solar, LLC*, No. 1:22-cv-00437, 2023 WL 128285 (S.D. Ohio Jan. 9, 2023); and *Berger v. Power Home Solar*, No. 3:22-cv-00242 (S.D. Ohio). The Court consolidated *Bowe* with *Evans v. Cross River Bank*, No. 1:22-cv-723 (S.D. Ohio); *Salazar v. Cross River Bank*, No. 2:22-cv-4314 (S.D. Ohio); *Riley v. Technology Credit Union*, No. 2:22-cv4315 (S.D. Ohio); Stenger *v. Technology Credit Union*, No. 1:22-cv-721 (S.D. Ohio); *Chamberlin v. Technology Credit Union*, No. 2:22-cv-4318 (S.D. Ohio); and *Genton v. Technology Credit Union*, No. 2:22-cv-4310 (S.D. Ohio). (ECF No. 17 at 1).

Apr. 22, 2014). In *McKinney*, the plaintiff sought accommodation for her disability from her employer. *Id*. at *4. The non-diverse defendant was a human resources officer who held a telephone conference with the plaintiff and suggested that plaintiff go on leave in response to the accommodation request. *Id*. The non-diverse defendant then asked the plaintiff whether she could meet the requirements of her job and stated that plaintiff would have to step down if she could not meet the requirements. The court found that it could not say with certainty that the plaintiff failed to state a colorable claim against the non-diverse defendant. The court noted that "a supervisor or manager may be held jointly and/or severally liable with her employer for her own discriminatory conduct" and that the non-diverse defendant "participated in the decision-making process with respect to plaintiff's request for an accommodation." *Id*.

Because a manager is personally liable for acts that he specifically directed to be done, Plaintiff maintains that the Amended Complaint is as sufficient as the complaint in *McKinney*. (ECF No. 10 at 8). Plaintiff cites in support an Ohio court of appeals case holding "[i]n order to hold a corporate officer personally liable for his actions in violation of the [Consumer Sales Practices Act], the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done." *Hanamura-Valashinas v. Transitions by Firenza, LLC*, 2020-Ohio-4888, ¶ 61, 160 N.E.3d 359, 370 (quoting *Yates v. Mason Masters, Inc.*, 11th Dist. Lake No. 2002-L-001, 2002-Ohio-6697, 2002 WL 31744694, ¶ 24). (ECF No. 33 at 1). Plaintiff alleges Grysiuk and Hynes are managers who "specifically directed their agent to solicit Plaintiff, to utilize false and misleading representations to secure the sale of a solar panel system to Plaintiff, and to omit material facts concerning the financing of the solar panel system to Plaintiff, they are liable under Ohio law." (ECF No. 33 at 3). The Amended Complaint, however, fails to plead those actions so clearly. Instead, Plaintiff's complaint has 227 paragraphs, and

7

Defendants Grysiuk and Hynes are each mentioned 11 times. The relevant paragraphs in the Amended Complaint include:

> At all times relevant herein Defendant Digital Federal Credit Union LLC is/was doing business as Digital Credit Union; was a not-for-profit financial cooperative, situated in the State of Massachusetts, and licensed to do business in the State of Ohio; and was acting in concert with and/or in a dual agency type relationship with Defendant Pink Energy, Defendant Trivest, L.P., Defendant Jayson Waller, Defendant Paul Grysiuk, and Defendant Jake [Hynes], by, among other things, providing financing to the Plaintiff in the purchase of the Pink Energy solar system and further ratifying the conduct of the Pink Energy Group.

(ECF No. 9 ¶ 5).

> After 2018 Defendant Waller continued to attend meetings at Pink Energy's offices throughout the country, either in person or remotely, and continually pushed sales agents, including Defendant Grysiuk and [Hynes], to engage in hard-sell tactics, including those described above.

(*Id*. ¶ 29).

> These hard-sell tactics were then employed by Defendants Grysiuk and [Hynes] in their training/managing of the sales people selling the Pink Energy Group's solar panel systems throughout Ohio.

(*Id*. ¶ 30).

> For the sake of clarity, Plaintiff allege that Defendants Waller, Paul Grysiuk and Jake [Hynes] were intimately involved in facilitating and directing sales agents, including the sales agent that had contact with Plaintiff, to push and use the misleading, fraudulent, and deceptive sales tactics noted above – it was the directive of Defendants Waller, Grysiuk, and [Hynes] that directly and proximately caused their agent to visit Plaintiff's home and use the deceptive tactics noted above and throughout this Complaint.

(*Id*. ¶ 57).

> Plaintiff demands judgment against Defendants, Power Home Solar, LLC. d/b/a Pink Energy, Defendant Digital Federal Credit Union, Jayson Waller, Trivest Partners, L.P., Paul Grysiuk, Jake [Hynes] equally and severally in an amount exceeding $25,000.00 in compensatory and punitive damages, attorneys' fees, interest, cost, and further relief to which Plaintiff may be entitled.

(*Id*. at 34).

Generally, the complaint uses one paragraph to conclude that the non-diverse defendants were "intimately involved in facilitating and directing sales agents" to use the deceptive tactics and that their directive caused an agent to use the tactics with Plaintiff. (*Id.* ¶ 57). This is far less than the specific communication and decision alleged in *McKinney*. *See* 2014 WL 171838, at *4. Plaintiff also includes various allegations against the Pink Energy Group which is defined as "Defendant Pink Energy and/or Defendant Trivest, and/or Defendant Waller, and/or Defendant Grysiuk, and/or Defendant [Hynes]." (ECF No. 9 ¶ 10). Nonetheless, the "and/or" nature of the definition of "Pink Energy Group" dilutes the relevance of those claims in this Motion as it is unclear what actions it is alleged that the non-diverse defendants committed.

This Court also recognizes that allegations that are merely conclusory when stating wrongdoing or misconduct are insufficient. *Miner v. Hirschbach Motor Lines, Inc.*, No. 1:05CV0703, 2005 WL 1377875 (N.D. Ohio June 7, 2005). For example, a court in the Northern District of Ohio addressed whether a defendant was fraudulently joined in a case arising from a vehicle accident with a defendant truck driver. *Id.* The plaintiff sued the driver, the owner of the truck, and the Ohio Turnpike Commission. The complaint, however, only alleged the Ohio Turnpike Commission engaged in "negligence, including, but not limited to, designing, operating and/or maintaining the toll roadway." *Id.* The court found the Commission was fraudulently joined and noted that "[t]he complaint simply alleges that the Commission somehow did something, about which, apparently, the plaintiff has no present knowledge, that breached some undefined duty to the plaintiff." *Id.* at n.1.

In the case *sub judice*, Plaintiff's allegations fail like the allegations in *Miner* due to lacking any allegation beyond mere conclusions. Plaintiff indicates Grysiuk and Hynes facilitated and directed sales agents to use the "misleading fraudulent, and deceptive sales tactics" and caused the

9

sales agent to use these sales tactics on Plaintiff. (ECF No. 9 ¶ 57). While this indicates how Grysiuk and Hynes may be connected with the Plaintiff, it merely draws conclusions that Grysiuk and Hynes were "intimately involved" in the direction and facilitation of deceptive sales tactics. (*Id*). There are no allegations of how these non-diverse defendants were intimately involved in this process.

Similarly, courts have found fraudulent joinder when there is a lack of factual specificity as to non-diverse defendants and when a complaint makes generic reference to all defendants but targets the diverse defendants. *See Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001). In *Salisbury*, the court found the non-diverse defendants fraudulently joined in a complaint against various defendants in a products liability action. *Id*. The plaintiffs alleged that the defendants were legally responsible for the manufacture and distribution of Oxycontin, an allegedly defective and unreasonably dangerous drug. *Id*. at 546, 549. The non-diverse defendants in the action were pharmacies which the plaintiffs only alleged "inappropriately distributed and recommended OxyContin to residents of Pike County, Kentucky." *Id*. at 550. The court noted that the plaintiffs did not "single out the pharmacy defendants" and failed to "describe with any degree of factual specificity the conduct giving rise to this suit." *Id*. Instead, the non-diverse defendants were referenced once in a thirty-four-page complaint. While the complaint used the general term "defendants," it made clear that the diverse defendants were targeted. *Id*. The court additionally noted that the fatal omission was the failure to show that the non-diverse defendants sold or supplied the OxyContin to the plaintiffs. *Id*.

Generic references to all defendants also are found insufficient when individual defendants have "no more than labels and conclusions" in the complaint. *See Johnson v. DePuy Orthopaedics, Inc.* No. 1:11 DP 21813, 2012 WL 13054734 (N.D. Ohio May 30, 2012). In *Johnson*, the plaintiffs

10

characterized the non-diverse defendant as engaged in commerce regarding a product at issue that was implanted into plaintiff by a physician. 2012 WL 13054734, at *3. The non-diverse defendant was described as being involved with advertising, promoting, labeling, selling, distributing, marketing "and/or" supplying the product to the plaintiff's treating physician. *Id*. The plaintiff then alleged various actions of the non-diverse defendants in conjunction with the diverse defendants, including selling the defective product, failing to warn of the product, and warranting that the product was safe. *Id*. at *4. The court noted that the complaint was twenty-one pages with ninety-one numbered paragraphs, but the non-diverse defendant was only mentioned alone four times. *Id*. The court found the allegations against the non-diverse defendant failed to distinguish between the diverse and non-diverse defendants' conduct and the plaintiff. Thus, the complaint failed to establish a colorable basis for liability. *Id.* at *5.

As in *Salisbury* and *Johnson*, Plaintiff only discusses the non-diverse defendants' specific acts once in a thirty-six page, 227 paragraph complaint. (ECF No. 9). The acts are in one paragraph where Plaintiff alleges the non-diverse defendants "were intimately involved in facilitating and directing sales agents" to use the deceptive sales tactics at issue. (*Id*. ¶ 57). This alone fails to show "with any degree of factual specificity the conduct" that is sufficient for bringing a case. For example, there are no allegations as to what the non-diverse defendants' intimate involvement was, how they facilitated and directed sales agents, or how their conduct relates to tactics used by the sales person who contacted Plaintiff. Instead, as in *Salisbury*, Plaintiff alleges the Pink Energy Group committed various wrongful acts, and these allegations appear to be targeting the diverse defendants. It is also dubious that Plaintiff does not individually assert claims against the non-diverse defendants in any of the fourteen causes of action, but specifically references each other defendant. (ECF No. 9 ¶¶ 91–227). *See e.g.*, *Johnson*, 2012 WL 13054734, at *5. (finding that

plaintiffs provided "no more than labels and conclusions insufficient to sustain viability of the legal claims" against the non-diverse defendants and noting that "there are no independent claims asserted against [the non-diverse defendant] nor do Plaintiffs seek specific relief against this Defendant.").

Plaintiff fails to meet the standard for specific and individualized factual allegations to distinguish the non-diverse and diverse defendants. This finding is bolstered by *Novelli v. Allstate Texas Lloyd's*, No. CIV.A. H-11-2690, 2012 WL 949675 (S.D. Tex. Mar. 19, 2012). In *Novelli*, the court found specific and individualized factual allegations against an adjuster can give rise to individual liability and noted the plaintiff failed to meet the standard. 2012 WL 949675, at *4. The plaintiffs were homeowners who obtained an insurance policy and later sued the corporate defendants—an insurer and an adjusting company—and the assigned adjuster. *Id*. at *1. The plaintiffs claimed that the non-diverse defendant, the assigned adjuster, "was improperly trained and inadequate to perform a thorough inspection of hurricane damages" and that he "conducted a substandard inspection of Plaintiffs' Property." *Id.* The court denied plaintiff's motion to remand and found the allegations against the non-diverse defendant and the corporate defendants were indistinguishable and were essentially allegations of wrongful conduct committed by the corporate defendants—the insurer and adjuster—through the non-diverse individual defendant. *Id*. at *4.

In the case *sub judice*, Plaintiff similarly fails to distinguish the non-diverse defendants' actions from the corporate defendants. This is illustrated by Plaintiff's grouping of Grysiuk and Hynes with other defendants to define them as Pink Energy Group and alleging various allegations against "Pink Energy Group" rather than the non-diverse defendants individually. (ECF No. 9 ¶ 10).

Thus, the allegations in Plaintiff's complaint support a finding of fraudulent joinder That said, even if Defendants were not fraudulently joined, this Court notes that it has another basis for jurisdiction: this case relates to a bankruptcy.

### B.  "Related to" Jurisdiction

As for whether this case is "related to" bankruptcy proceedings, Defendant Waller contends the case is related to Defendant Pink Energy's bankruptcy proceeding because the debtor is a named defendant in this case and the claims against the non-debtor are derivative of the claims against the debtor. (ECF No. 17 at 11).

First, as Defendant Waller has noted, Pink Energy is the debtor in the pending bankruptcy case and is a named defendant here. (ECF No. 17 at 12). Defendant Waller maintains that this is dispositive and that "[t]here is no question that a favorable or unfavorable judgment against a bankrupt debtor would 'alter the debtor's rights [and] liabilities.'" (ECF No. 17 at 12). Indeed, a cause of action is "related to" a bankruptcy proceeding for purposes of jurisdiction if the cause of action's "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Dow Corning Corp.*, 86 F.3d at 489. Here, a debtor's rights and liabilities are directly impacted, as the debtor is named and being directly sued. *See e.g.*, *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 CIV. 0277 (LAP), 1995 WL 489711, at *6 (S.D.N.Y. Aug. 15, 1995) (finding "there can be no dispute that there is jurisdiction over" the claims against only the debtor including specific performance and breach of contract claims); *In re Chateaugay Corp.*, 213 B.R. 633, 639 n.6 (S.D.N.Y. 1997) ("Clearly, the claims against the Debtors themselves . . . have a 'conceivable effect' on their estates. The issue is whether successor liability claims against non-debtor . . . have such a 'conceivable effect.'").

Plaintiff argues Defendant Waller has failed to prove this case would impact the bankruptcy estate. When addressing the abstention argument (discussed further below), Plaintiff references the effect of the Bankruptcy Court's Order (the "Order") modifying automatic stay. (ECF No. 10 at 13). The Order allowed Pink Energy to be a named defendant "in the United States District Court for the District of Ohio, with the further limitation and restriction that any recovery on any judgment against the Debtor would be limited to available insurance coverage, or recovery from other non-debtor defendants." (ECF No. 1-3 at 3). Plaintiff relies on this language to argue that the Order means the litigation would not impact the bankruptcy estate if Plaintiff only pursued Pink Energy's available insurance money. (ECF No. 10 at 13). Based on the Order, Plaintiff argues this matter is unrelated to a bankruptcy proceeding because Plaintiff is not seeking liability from Pink Energy other than to the extent of its insurance. (ECF No. 10 at 13).

While the Order limits the "recovery" on judgment against the debtor to available insurance coverage, this Court's judgment is not limited to available insurance coverage. (ECF No. 1-3 at 3). The Bankruptcy Court granted relief so Plaintiff could "pursue applicable insurance monies." (ECF No. 33 at 3).  Nothing in the Complaint, however, limits Plaintiff's request for relief to available insurance.

Even if the judgment in this case would only impact Pink Energy's insurance, this Court notes that generally, a debtor's interest in insurance policies is property of the debtor's bankruptcy estate under 11 U.S.C. § 541(a)(1). *In re Dow Corning Corp.*, 86 F.3d at 495. For example, the court in *In re Dow Corning Corp.* held that a finding of "related to" jurisdiction over claims against both the debtor and non-debtors was supported by the debtors and non-debtors sharing joint insurance. *Id.* The Sixth Circuit noted that the insurance policy at issue was covered under the expansive definition of property of an estate under 11 U.S.C. § 541(a)(1). *Id.* The debtors and non-

14

debtors argued that "related to" jurisdiction existed as to the claims against the non-debtors because there was joint insurance and permitting several trials against the non-debtors, without the debtor, may result in the non-debtors making claims for insurance before the debtor is able to make any claims of its own. *Id*. The district court found no basis for jurisdiction over the non-debtors' claims because no judgment had been entered against the non-debtors and the non-debtors did not have any claims pending against the joint insurance policies. The Sixth Circuit found the district court erred because an immediate impact of the estate is not a prerequisite to finding "related to" jurisdiction. *Id*. The court then held "related to" jurisdiction over the non-debtors was supported by the debtor's interest in their insurance policies threatened by causes of action against non-debtor defendants who were also co-insurers. *Id*.

The impact on a debtor's insurance is far less attenuated here as the debtor is named in this civil proceeding. This Court need not look at whether the outcome of this case would result in other parties having claims against the debtor's insurance. Instead, this case involves a direct impact on the debtor's insurance. *See e.g.*, *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 784 (Bankr. M.D. La. 2001) ("Most courts addressing whether "property of the estate" includes insurance policies have held that an insurance policy owned by the debtor is property of the estate under 11 U.S.C. § 541.53."). This Court thus finds that claims against the debtor, Pink Energy, are related to the bankruptcy proceeding.

The next inquiry is whether the claims against the non-debtors are similarly "related to" the bankruptcy proceeding. The cause of action "'need not necessarily be against the debtor or against the debtor's property' to satisfy the requirements for 'related to' jurisdiction. *In re Dow Corning Corp.*, 86 F.3d at 489. For example, in *In re Dow Corning Corp.*, the court found that the district court had subject matter jurisdiction over claims pending against not only the Chapter 11

15

debtor but also the non-debtors when there was a possibility of contribution or indemnification liability. *In re Dow Corning Corp*., 86 F.3d at 494. In that case, the non-debtors removed claims in which they were named defendants with the debtor. *Id*. at 486. When analyzing whether the district court had subject matter jurisdiction over the claims pending against the non-debtor defendants pursuant to 28 U.S.C. § 1334(b), the Sixth Circuit found that "[c]laims for indemnification and contribution, whether asserted against or by [the debtor], obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as [the debtor]'s ability to resolve its liabilities and proceed with reorganization." *In re Dow Corning Corp*., 86 F.3d at 494. The possibility of the debtor to be held liable to non-debtors for contribution or indemnification claims "establish[ed] a conceivable impact on the estate in bankruptcy." *Id*. at 488, 486.

Plaintiff argues that Defendant Waller failed to demonstrate that the case against him would impact the Pink Energy bankruptcy estate because Defendant Waller has provided no proof that Pink Energy would have to indemnify Defendant Waller or pay for his attorneys' fees. (ECF No. 33 at 4). In the case *sub judice*, Defendants do not claim any indemnification or contribution obligations. (ECF Nos. 10 at 11; 17 at 13).

The Sixth Circuit's decision in *In re Dow Corning Corp*, however, emphasizes that "when [a] plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *In re Dow Corning Corp.*, 86 F.3d at 492 (citing *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986). The court noted the significance of the extent to which parties are "intertwined" and cites a Fifth Circuit decision supporting this principle:

> The plaintiff has filed one complaint against the defendants seeking liability for
> their joint conduct. Success against any of the defendants will have a potential

> effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

*Id*. at 492 (quoting *In re Wood*, 825 F.2d 90, 93–94 (5th Cir.1987)). The Sixth Circuit additionally explained the importance of "[t]he degree of identity between a debtor and non-debtor codefendants." *In re Dow Corning Corp*., 86 F.3d at 492 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir.1986)). The Sixth Circuit referenced these principles when examining the contribution and indemnification liability and finding the district court had "related to" subject matter jurisdiction over claims against codefendant non-debtors because the nature of the claims against the debtor and non-debtor defendants were closely related. *Id*. at 493.

Both Plaintiff and Defendant Waller discuss *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 870 (S.D. Ohio 2004), in which the court found the defendants' indemnification and contribution claims could conceivably alter the bankruptcy estate. (ECF Nos. 10 at 11; 17 at 13). Plaintiff's argument relies on the indemnification and contribution argument made by the non-debtors in the case. (ECF Nos. 10 at 11-12; 33 at 3-4). Although the indemnification and contribution arguments were a significant part of the court's decision, before reaching its finding, the court noted that jurisdiction exists when "the conduct of the non-debtor defendants and . . . the debtor, was 'indisputably intertwined' and the theories of liability asserted by the plaintiffs were "'necessarily interconnected with [the] Defendants' rights to contribution.'" *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 870 (quoting *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 321 (S.D.N.Y.2003). The court held that a finding

of "related to" jurisdiction was supported because the allegations against the non-debtor defendants stemmed from the roles they played in the debtor's operations to the extent that if the debtor committed no wrong, the plaintiffs would need to prove their claims against the non-debtors. *Id*. at 871.

Similarly, in the case *sub judice*, the nature of the claims against the debtor defendant, Pink Energy, and the non-debtor defendants are closely related and "indisputably intertwined." Plaintiff's Amended Complaint names each defendant, but defines the non-debtor and debtor defendants (except Defendant DFCU) as "Pink Energy Group." (ECF No. 9 ¶ 10). Plaintiff alleges fourteen causes of action: ten are against the Pink Energy Group and DFCU; one is against only DFCU; one is a declaratory judgment involving Pink Energy and the Pink Energy Group; one is a declaratory judgment involving Pink Energy and DFCU; and one is a declaratory judgment involving Pink Energy and Defendant Waller. (*Id*. ¶¶ 91–227).

The first cause of action is against Pink Energy Group and DFCU for breach of contract. (*Id*. ¶¶ 91–98). Plaintiff alleges that "[t]he Pink Energy Group has breached the terms of the Sales Agreement by failing to deliver a solar system that meets industry standards; by failing to install the system in a workmanlike manner; by failing to competently install and connect the various components of the system, by failing to activate the system according to the Sales Agreement and failing to maintain and or repair flaws in the system which occurred and continue to occur to the present date." (*Id*. ¶ 94). Plaintiff also alleges that, pursuant to the "Holder Rule" Notice in the Loan Agreement, DFCU is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶ 98).

Similarly, the second cause of action is a fraudulent misrepresentation claim and alleges "[t]he Pink Energy Group made false representations regarding facts material to the purchase,

installation, performance, and maintenance and repair of their solar system . . . ." (*Id*. ¶ 104). The Pink Energy Group possessed actual and/or constructive knowledge of the falsity of their representations related to the quality of their product, the quality of their installation, and the ability of their solar system to meet the estimates provided in the Sales Agreement, as well the inflated costs of the solar panel system." Plaintiffs also allege that "The Pink Energy Group possessed actual and/or constructive knowledge of the falsity of their representations . . . . . [and] [t]he Pink Energy Group made the fraudulent and false misrepresentations to matters of material fact . . . with the intent to mislead Plaintiff into relying on such fraudulent and false misrepresentations." (*Id*. ¶ ¶ 104–05). Plaintiff also states that DFCU acted by and through Pink Energy and pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶¶ 106, 113).

The third and fourth causes of action are against Pink Energy Group and DFCU. While the claims focus on the actions of the Pink Energy Group, they allege that the Pink Energy Group acted in a dual agency relationship with DFCU and/or acted by and through their agent, Pink Energy, and further that, pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶¶ 117–18, 124, 127, 129, 135).

The seventh, eighth, ninth, and eleventh causes of actions are also against Pink Energy Group and DFCU and focus on the actions of the Pink Energy Group. (*Id.* ¶¶ 152–80). These causes of action also allege DFCU, pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id.* ¶¶ 117–18, 124, 127, 129, 135).

The tenth cause of action is regarding civil conspiracy and alleges DFCU acted in concert with the Pink Energy Group in facilitating fraudulent conduct. (*Id*. ¶ 186). The twelfth cause of

action is only against DFCU, but still alleges its actions were "an integral part of the Pink Energy Group and DFCU's fraudulent scheme." (*Id*. ¶ 209). The thirteenth cause of action is to hold Defendant Waller personally liable. For the fourteenth cause of action, Plaintiff alleges specific actions of the Pink Energy Group and further alleges "Defendant Digital Federal Credit Union acted in concert with the Pink Energy Group" and pursuant to the "Holder Rule" Notice in the Loan Agreement, is subject to the same claims asserted against Pink Energy Group. (*Id*. ¶¶ 223, 227).

In each cause of action involving Pink Energy Group, Plaintiff's allegations mainly reference actions of *Pink Energy Group* which demonstrates the extent the debtors and non-debtors are indisputably intertwined. (*Id*. ¶¶ 91–135; 152–205; 221–27). Although DFCU is not included in Pink Energy Group, as explained above, the allegations are all linked to the actions of Pink Energy Group. Therefore, this Court finds that it has "related to" bankruptcy jurisdiction.

## C. Abstention

Plaintiff argues that if this Court finds it has jurisdiction because this is a case "relating to" bankruptcy proceedings, this Court should nonetheless abstain from hearing the matter or equitably remand this case to state court. (ECF No. 10 at 12).

### 1. Discretionary Abstention

This Court has discretion to abstain under 28 U.S.C. § 1334(c)(1) or to equitably remand under 28 U.S.C. § 1452(b). Under Section 1334(c)(1), federal courts consider various factors including: "1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other

than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted 'core' proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of non-debtor parties; and 13) any unusual or other significant factors." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 885 (quoting *Mann v. Waste Mgmt. of Ohio, Inc.,* 253 B.R. 211, 214 (N.D.Ohio 2000)).

The analysis under § 1334(c)(1) is largely the same as under § 1452(b). Section 1452(b) provides, "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Courts consider: "1) duplicative and uneconomical use of judicial resources in two forums; 2) prejudice to the involuntarily removed parties; 3) forum non conveniens; 4) the state court's ability to handle a suit involving questions of state law; 5) comity considerations; 6) lessened possibility of an inconsistent result; and 7) the expertise of the court in which the matter was originally pending." *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d at 885 (quoting *Mann,* 253 B.R. at 214–15).

Plaintiff argues this Court should abstain because Defendant Waller has not asserted how this case impacts the Pink Energy Bankruptcy and that the Bankruptcy Court for the Western District of North Carolina decided this matter would not affect the bankruptcy estate so long as Plaintiff only pursued Pink Energy's insurance monies. (ECF No. 10 at 12–13). Plaintiff asserts he is not seeking liability from Pink Energy other than from its insurance monies. As this Court

has decided, this case relates to the Pink Energy bankruptcy proceeding as insurance policies are part of the bankruptcy estate. Further, while the Bankruptcy Court may have modified the stay and stated that recovery of any judgment would be limited to insurance monies, this Court's final judgment does not have the same limitations based on Plaintiff's request for relief.

Plaintiff also argues that this case involves state law claims, and "comity counsels in favor of state-court resolution of state-law claims." (ECF No. 10 at 13). Nonetheless, as Waller argued, this Court is familiar "with the facts and legal issues in the near twenty Pink Energy/Waller lawsuits Plaintiff's counsel has brought in federal court, all being close to carbon copies." (ECF No. 17 at 15). Plaintiff additionally argues that its right to a trial by jury would be eliminated if this matter is further removed to the North Carolina bankruptcy court and Plaintiff would suffer significant prejudice for losing this right and incurring significant expenses for obtaining bankruptcy counsel and traveling to litigate in the North Carolina bankruptcy court. This case was properly removed to the "district court for the district where such civil action is pending." *See* 28 U.S.C. § 1452(a).

Based on Plaintiff's arguments and consideration of the factors used to determine abstention, this Court does not find abstention appropriate.

### 2. *Mandatory Abstention*

Plaintiff argues generally for abstention under § 1334 but only provides support for discretionary abstention. (ECF No. 10 at 12–14). Under § 1334, however, there is a provision for mandatory abstention which applies when: (1) a timely motion is made; (2) the claim or cause of action is based on state law; (3) the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case; (4) the action could not have been commenced in federal court absent § 1334 jurisdiction; (5) the action is commenced in state forum

of appropriate jurisdiction; and (6) the action can be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2); *see also In re Dow Corning Corp.,* 86 F.3d at 497.

While parties did not expressly address mandatory abstention, this Court notes that it does not apply here because this Court has decided it also has jurisdiction based on Defendants' other ground for removal: diversity jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 10) is **DENIED**. The Defendants' motions to dismiss the original complaint (ECF Nos. 3, 5, 6) and the First Amended Complaint (ECF Nos. 24, 25, 27, 34) are **DENIED as moot**. This Court granted a motion to stay briefing on motions to dismiss Plaintiff's complaint pending the resolution for the Motion to Remand. (ECF No. 36). As such, the stay is **LIFTED**. To give Defendants a chance to make any desired updates, the current motions to dismiss are **DENIED as moot** (ECF Nos. 47, 48, 49). Defendants may refile or file a new/updated motion by no later than **March 14, 2025**. Plaintiff's response brief to any Motion to Dismiss is due by **March 24, 2025**, and Defendants' reply is due by **March 31, 2025**.

   **IT IS SO ORDERED.**

                                                                                    ALGENON L. MARBLEY
                                                                                    UNITED STATES DISTRICT JUDGE

**DATE:  March 5, 2025**

23